We have four argued cases this morning. The first is No. 15-1027, Medinol Ltd. v. Cordis Corporation. Mr. Pildes, is that how you pronounce it? That's correct, Your Honor. Okay. May it please the Court, Richard Pildes for Medinol. The District Court dismissed our Rule 60B motion for one reason and one reason only. Because as a lower court, it was required to hold that Ackermann remained good law. On this appeal, we now know that that conclusion is wrong as a matter of law. The Supreme Court has authoritatively held that Ackermann is not good law. And as a result, the only basis the District Court provided for its decision is now legally erroneous. The Court could therefore simply vacate that. Your problem, though, is the Supreme Court in Gonzales said that these kind of circumstances where you fail to appeal don't come within Rule 60B-6. So how do you deal with that? Well, Your Honor, first, on this particular point we're making now, which is a small point in the case, our claim is that the only basis for the decision below is not a legally valid basis. I understand that. But at the time, you knew that Petrella was before the Supreme Court, that they granted cert. You argued before the District Court that that might result in a change in the laches jurisprudence. And yet you didn't take a direct appeal at the time and let the time run. And Gonzales appears to say that under those circumstances, that's a bar to 60B-6 relief despite a change in the law. So how do you deal with that? The way we deal with that, Your Honor, is relying on the general principle that all courts of appeals have recognized, including this court recently in the Micron Technology case, which is when an appeal would be futile because clearly established circuit precedent is adverse to the claim, then there is no waiver if an appeal is not taken on that claim. That was true in Gonzales too, right? I don't believe Gonzales was a case where the appeal would have been completely futile because there was clearly established precedent that was adverse to the claim being made. Wasn't there clearly established precedent in the 11th Circuit that that claim was barred? In Gonzales, Your Honor? Yeah. In Rule 60B-6 context, although this occurs less often there, as in virtually every other context of which I am aware, the courts have said that it is futile to bring us an appeal and you are not penalized for failing to bring an appeal. Those are cases where the issue comes up on direct appeal and the argument is it wasn't raised below. Those cases are almost entirely not Rule 60B-6 cases, and Gonzales is a Rule 60B-6 case. It does involve a change in law, and the court said no, 60B-6 relief is not available because you failed to appeal, which is to seek rehearing or even to seek certiorari. These cases also arise on habeas and in other collateral contexts in which a claim was not pressed on direct review and is being brought up on 60B-6. What is it Gonzales? Gonzales said we're not going to treat this as a habeas issue. We're just going to resolve it under 60B-6, so I'm not sure I'm following why it matters that Gonzales was a habeas or was attempted to be argued as a habeas case. I was talking about other cases beyond Gonzales as well. For example, Judge Sutton in the Sixth Circuit has said Rule 60B-6 is an exception by its nature to waiver rules when you would have had to be prophesizing a profound change in law in the face of adverse circuit precedent. Rule 60B-6 is the correct way to bring a challenge based on a change of law that took place after the time for appeal had run. What do you do about, though, Gonzales' language saying under 60B-6 you have to have extraordinary circumstances and a change in law is not an extraordinary circumstance? Yes, we agree with that, Your Honor. Our position here is not that because there was a profound change in law that by itself constitutes extraordinary circumstances. So the extraordinary circumstances here are basically two considerations. The first is the nature of the change in law that's at issue here, the nature and magnitude which many courts have relied on. What the Supreme Court said in Petrella and then confirmed in SCA is that federal courts simply lack legitimate power to employ latches in cases at law. The Supreme Court has described what the lower court did here on the substantive opinion as a violation of the separation of powers. That's extremely strong language. The Supreme Court rarely describes a lower court as having violated the separation of powers. And the reason the lower court did that is it thought, in essence, it had the power to sit as a court in equity when the Supreme Court said, no, you are sitting as a court of law when Congress has passed a statute of limitations. So the nature of the change in law here is the Supreme Court is saying this is a court that acted without any legitimate federal authority, that this court exceeded its powers under the Constitution. It intruded into the domain of Congress. In many ways, the court's analysis is tantamount to saying that the judgment was essentially a void judgment. They don't use that language. No, they don't. They don't use that language. But everything the court says here about the separation of powers principles that are at stake, the inappropriateness of judges overriding Congress's considered policy judgments. What's the other reason? The other reason is that the way these principles were applied in the facts of our case further illustrates the extraordinary circumstances with respect to us in particular. So the latches issue here was not some ancillary issue, obviously. It was a central issue to the case. It resulted in the complete dismissal of our entire case, therefore precluding us from getting to a jury to raise our infringement or substantive issues. And the reason the judges applied latches against us flies in the face of exactly the policies the Supreme Court said Congress was trying to establish by creating provisions like Section 286. The Supreme Court said in Petrella, we understand intellectual property holders should not be in the position of having to rush into court to sue to protect their rights. We understand, or Congress understood, there were good reasons to allow for delay, to allow suits to mature, to decide whether it's worth the candle to pursue litigation. We give up certain rights in doing that. We can't go back beyond the six-year period. So if we wait, as we did here, and try to negotiate a business relationship with Johnson & Johnson, when that falls through and we turn around and sue, in this case, the judge said, I've decided you waited too long. It's unreasonable to have delayed this long. In fact, the judge invoked the six-year presumption against bringing suit to apply latches to us. Why didn't you appeal when the Supreme Court was hearing Petrella? Your Honor, it's interesting that the SCA case, which was pending in this court at the time Petrella was also before the Supreme Court, we went back and looked. SCA itself did not even brief Petrella at that time. We saw the possibility, certainly, that Petrella, if various contingencies fell into place, we raised it. You mentioned that you were well aware of it. You raised it in the district court. You said that this might result in a change in law, and yet you didn't appeal. Yes, because there were many contingencies involved between the fact that the court was hearing the case and whether the decision would come out in the way it did, and then whether we would rest on such broad principles that it would actually have direct application to the Patent Act. Does the Second Circuit address this particular issue that you have to file an appeal in order to preserve your 60B6 motion? I don't believe the Second Circuit's opinions, if you look at the Vivendi case, which is one of the more recent statements from the Second Circuit on how it treats waiver issues in a somewhat analogous context, a change in law from the Supreme Court, not 60B. The Second Circuit said the same thing all the circuits have said, which is you do not have to bring an appeal that flies in the face of well-established circuit precedent. In fact, no court of appeals wants a doctrine to the contrary. Otherwise, you're flooded with protective appeals that fly in the face of well-established circuit precedent. Here, it's not just circuit precedent. It's an en banc decision of this court. For nearly 25 years, it was the governing law in the patent context. It hadn't been challenged or undermined in any way in the patent context. You couldn't undermine it through other courts of appeals decisions because of the role of this court in the patent context. We did not file an appeal that the district court or a panel of this court could not have acted on because it was bound by Aukerman before Petrella had been decided and changed the law. We did what we're supposed to do, I believe, which is we didn't bring a frivolous appeal in the teeth of well-established circuit precedent. Frivolous appeal? Well, the appeal would have been frivolous in the sense that there was no authority yet from Petrella that made it clear that Aukerman had been substantially undermined. So if we had brought that appeal, this court would have simply reapplied Aukerman, presumably, and that would have been the end of the matter. What about the Second Circuit's decision in Stevens v. Miller, which seems to say that the failure to appeal bars relief? Your Honor, I think every time you see one of those statements, the failure to bring an appeal bars relief, it's in a context where there was a calculated decision not to appeal for some set of reasons. None of those cases involve claims of futility or that an appeal would have been inappropriate. Well, it involved situations, Gonzalez included, where the governing law was against the party at the time, and they failed to appeal in the light of that law, which was changed later on. And the Supreme Court said you should take an appeal, and if you don't, 60 v. 6 relief is not available to you. Again, we agree 60 v. 6 is not a substitute for appeal. And, of course, when we come to you on 60 v. 6, we have a higher burden than we would on a direct appeal, because we have to show those situations in which there was a change in law, and yet the Supreme Court said you should have appealed in the teeth of the existing law if you wanted to challenge it. Your Honor, I don't believe there's any law that says in the 60 v. 6 context the failure to take an appeal, which would be futile in the sense that clearly established doctrine is against it. Why is that not the case in Gonzalez? Wasn't at the time that they failed to take the appeal, wasn't the law against them? At the time they failed to take the appeal? Yeah. The law was not, I don't remember at the moment, if the law was as firmly established as this court precedent in Aukerman was established. But in the face of this court entertaining SCA and in the face of the Petrella decision, wouldn't it have been wise to have taken a protective appeal? Well, Your Honor, I just don't think courts of appeals want litigants to be filing protective appeals based on remote contingencies that if the following dominoes fall into place. Perhaps not, but was this really remote? Was this futile? Would it have been futile? Well, we know it would have been futile in the sense that even after Petrella, the panel of this court in SCA said we can't do anything about this, and the district court couldn't have done anything. A change in law. Yes. And yet if a litigant sees the potential for there to be such a large change in law, shouldn't they file a protective appeal to preserve any 60B6 rights it may have? Your Honor, as this court said in the Micron case, after surveying many courts of appeals, I think there's a citation list that goes on for over a page. The common sense approach and the general rule, as Judge Taranto called it, is that there is no waiver when you fail to take an appeal in the face of adverse circuit precedent. That's not a 60B6 case, right? It's not 60B6, but I'm not clear why you should be penalized in this context uniquely from all other contexts for failing to file protective appeals that would flood the courts with these kinds of protective appeals. Most courts seem to disagree with you. The difference in Gonzales, Your Honor, I believe, is that the nature of the change in law there was a much more routine kind of change in law. It was a standard statutory interpretation of the habeas statutes. And again, what I want to emphasize here is the Supreme Court has told us the change in law here goes to issues that are fundamental to the separation of powers, fundamental to the authority of federal courts, fundamental to the rule of law, because this is a discretionary set of judgments that the court had no power to make under the Supreme Court's decisions. And yet it led us to having our entire case being thrown out. It's an illegitimate, inappropriate, unauthorized exercise of federal judicial power that violates the separation of powers. That's a very profound statement from the Supreme Court. I think we're out of time, Mr. Gonzales. We'll give you two minutes for rebuttal. Okay, thank you.  May it please the Court. My name is Craig Discant, and I represent Johnson & Johnson. I think this case is on all fours with Gonzales in the Supreme Court and Travelers in the Second Circuit, and I don't think you really need to look much beyond either one of those two cases. Gonzales is particularly noteworthy. The Supreme Court first says, it's hardly extraordinary that subsequently after Petitioner's case was no longer pending, this court reached a different interpretation. That's not extraordinary. It's all the less extraordinary in Petitioner's case because of his lack of diligence in pursuing the case. What do they mean by that? What's the lack of diligence, and why does extraordinary have anything to do with it? Well, extraordinary has something to do with it because that's the standard under Rule 60b-6. It is not blameworthy that one chooses not to take an appeal for good tactical reasons. You get fault for that, but you don't get treated as extraordinary in the Rule 60b-6 context. And in Gonzales, the Petitioner made a claim contrary to Eleventh Circuit law. He lost in the district court in the Eleventh Circuit. He was denied leave to appeal in the Eleventh Circuit. He didn't seek rehearing in the Eleventh Circuit. He didn't file a petition for certiorari. Counsel, we have a situation here where both the Federal Circuit and the Supreme Court stayed the case during pending SCA, correct? In this case, yes. So in those situations, shouldn't the court immediately look at and see if an appeal has been filed and dispose of it? Why would we and the Supreme Court stay the case pending SCA if the law or the outcomes are going to be that you have to have protected your 60b-6 rights by filing an appeal? I think the answer is that's jumping to the merits of the appeal, and I think the easier course for all appellate courts, and I think it's the proper course, is not to prejudge the merits, but rather stay it and then decide what to do after the law has been clarified. Should we judge a case on the basis of whether an appeal has been filed or not? Yes. You should judge a Rule 60b motion. Are you saying we should not have stayed the case during the SCA? I think it would have been entirely proper had this court chosen to go into the merits of the appeal to affirm the district court. I think that would have been a proper choice of this court's discretion. But at the same time, I think it's a wise use of the court's discretion not to engage in the merits of a pending appeal when it might or might not be affected by a subsequent decision. I think that's all that those rulings stand for. You would articulate that maybe parties should all file a protective appeal in all cases. Well, I think that it depends on what the point of it is. I think Ackerman and a whole line of Supreme Court and Second Circuit cases stand for the proposition, if you make a free, calculated, and deliberate choice not to appeal, and your guess is wrong, you have to pay the penalty in a Rule 60b-6 context. But that doesn't mean that you should always be filing appeals because you've got to have a basis for doing it. In this case, this case is particularly blameworthy, and that brings me back to Gonzalez, because the Supreme Court granted certiorari in the case that resulted in the reversal of the 11th Circuit precedent while Gonzalez's time to seek certiorari was still running. It's in footnote 10 of the Supreme Court decision. We granted review to resolve the conflict only eight days after the 11th Circuit denied Petitioner a certificate of approval and well within the 90-day period in which Petitioner could have sought certiorari. It is indisputable that had he but filed a petition raising the same issue that he now advances, we would have granted him reconsideration in light of our later decision. That's what would have happened here had they done exactly the same thing. The Supreme Court faulted Gonzalez for not filing a petition for certiorari, protective or otherwise, and the situation is exactly the same. Travelers in the Second Circuit is very similar. In Travelers, the Second Circuit decided the case, a RICO case was at issue. It decided the case in April, April 12th. The case was argued. The same issue is pending before the Supreme Court at that moment. It was argued two weeks later in the Supreme Court. Travelers, for some reason, did nothing. I'm sure it was well represented by competent, well-paid counsel. It did not seek certiorari. The Supreme Court changed the law within two months, and Travelers lost. The Second Circuit said, Ockerman controls, you didn't take an appeal, you lose. Don't our own rules recognize the appropriateness of arguing on appeal for overruling of prior precedent? Of course. Especially when there are no circuits that will disagree with this court. The only way to change the law in this court is to challenge it in this court. Indeed, when we talk about extraordinary, you take the only case that's really four square change in the law case is the terrorist cases in the Second Circuit, where the Second Circuit went out of its way to say, the group of disadvantaged plaintiffs had sought to challenge law every step of the way. They lost out, the law changed later, and the Second Circuit thought it was unfair to disadvantage one of two identically situated groups of plaintiffs. That was extraordinary, because they had pursued their remedies. Methanol had a completely lackadaisical interest in this issue. It knew it was out there. It was represented by Professor Arthur Miller, Wright and Miller. He told the District Court, the case is out there. But they didn't embrace it. They didn't ask the court to stay the case so it could be decided. They didn't file an even perfunctory motion to challenge the existence of laches in Federal Circuit case law. They did nothing. And then the case was argued. We actually attached portions of the Supreme Court argument to our post-trial papers. I think many observers thought that laches was going to survive as a defense in copyright law. Presumably that's what they thought, because they did nothing. But their interest in laches in patent law and challenging it did not exist until three months after Petrello was decided, when for the first time they said this verdict should be set aside. There's an interest in finality here that we all recognize. Johnson & Johnson has an interest in finality. As we told the District Court, when this case was pending in the District Court, we were in the process of selling the subsidiary. The record shows that with a final judgment against Methanol, we did sell the subsidiary. And J&J agreed to retain the risk associated with this defunct lawsuit. That's reliance on the outcome of this judgment. There's no basis, there's nothing extraordinary about any of this. I haven't even mentioned whether Petrello did or didn't change the law, and I think it did not change the law. Can you remind me of the timing? You had just said, I think, that it was three months after Petrello decided that Methanol filed its 60 v. 6 motion. Can you just walk me through the timing? I may be a little bit off on the dates, but essentially the trial was held in January, the day before Petrello was argued in the Supreme Court, as Professor Miller told the District Judge. It was argued in February. There were post-trial papers. It was decided, I think, in April. It was decided in April. The time to appeal expired in early May, I think. By the end of May, Petrello had been decided, and sometime in August they came back to the District Court asking to file this 60 v. 6 motion. Are we then in a situation in which, during the appeal period, the same argument existed to them as it did after the appeal period when they filed the 60 v. 6? The same argument existed at all times, even without Petrello, because, as we know, Petrello took the standard principle. But here we have a situation in which, during the appeal period, Petrello was decided. No, no, no. Petrello was decided after the time to appeal period expired. That's not correct. But the argument was open to any litigant who ever wanted to make that argument, that Latches doesn't provide a defense where there's a statute of limitations provided by law. Are you saying that it was on August 15th, the August 15, 2014 conference, that that's the first time it brings up Rule 60 v. 6? Yes, yes. So literally months passed after the final judgment has been entered. And, you know, it's of a piece with the lack of extraordinary diligence on the part of Metinol at all times throughout this case. I frankly think without getting any further into the district court's decision, it would have been an abuse of discretion for her to grant this appeal. Petrello didn't change the law in federal circuit case law, as the SCA panel said. And no one's ever disagreed with that. SCA changed the law. Petrello didn't. Petrello was a copyright case. And all it did really was apply settled notions of Latches to the copyright statute. So I would say there is nothing appealing about this whatsoever. And if the court has no further questions, I'm happy to rest on our brief. Okay. Thank you, Judge. Mr. Felder? Yes, Judge, I wanted to answer your question not just about Gonzalez, but about waiver on 60B. If you look at our reply brief at pages 16 to 17, we actually have a number of cases, including U.S. Supreme Court cases, the Buck case, the Liljberg case, in which the court took on 60B-6 motions and did not hold that the failure to appeal during the direct process was a bar to 60B-6 consideration. Did they even consider the issue in that case? Yes, they did consider the issue. They explicitly talked about the fact that this was not a bar to 60B-6. The failure to appeal? The failure to raise an issue on appeal, yes, or the fail to appeal altogether, yes, Your Honor. And the same thing in the Second Circuit, the Morero case, which we cite to you and is also at page 16 or 17 of the brief. And back on the Gonzalez discussion, which you introduced, I went back and had a chance to look at the opinion more closely. And what the court is holding the litigant responsible for is not acting when the precedent was at odds with the rule in several other circuits, that there was an opening that should have been obvious for the appeal there. Gonzalez was not a case in this discretionary judgment under 60B-6 in which there was a firm, clear, settled, en bas precedent. And that is relevant in the discretionary judgment here. You were suggesting earlier that you're taking an appeal during the time for appeal would have been frivolous. But don't our rules specifically say that it's appropriate to argue, to preserve an argument for overruling precedent on appeal and that you're not going to be sanctioned for that? I did not mean to suggest we would be sanctioned, but I think that— But it's appropriate to do that, right? Our rules specifically say that, don't they? The rules permit it. But courts don't generally penalize litigants for failing to raise on appeal arguments where existing circuit precedent clearly forecloses it. Now, you have to pursue other avenues if you have them. And as I say, 60B-6 imposes a higher hurdle on us if we go that route. And we have to meet the extraordinary circumstances requirement here. Okay. I think, Mr. Poulos, we're out of time. Okay. Thank you very much, Ron. Thank you. Thank all the counsel and cases submitted.